Emilie SCHULMAN, Hosiery by Emilie, Inc., and Harem Hosiery, Inc., Plaintiffs,

v.

BURLINGTON INDUSTRIES, INC., et al., Defendants.

No. 66 Civ. 130.

United States District Court S. D. New York.

June 28, 1966.

House, Grossman, Vorhaus & Hemley, New York City, for plaintiffs; Sidney Greenman, Neal H. Pilson, of counsel.

Gainsburg, Gottlieb, Levitan & Cole, New York City, for defendants Burlington Industries, Inc., Herbert M. Kaiser

and Howard A. Kaiser and Lawrence Greenwald; Stephen A. Lefkowitz, New York City, of counsel.

J. Leon Israel, New York City, for defendants Parklane Hosiery Inc., and Herbert Somekh.

FRANKEL, District Judge.

Plaintiffs, who own and operate in Chicago stores selling women's hosiery at retail, have filed a four-count complaint against (1) Burlington Industries, Inc., a manufacturer of women's hosiery, among other products, (2) Parklane Hosiery Company, Inc., which is both a wholesale distributor and an operator of retail stores selling women's hosiery, and (3) several officers and employees of these defendant corporations.[1] The second and third counts, which are not of direct concern at this time, allege, respectively, breach of a restrictive agreement by Parklane and wrongful inducement of that breach by Burlington. The first and fourth counts, which do concern us now, seek treble damages under Section 4 of the Clayton Act (15 U.S.C. § 15) for various alleged violations of the antitrust laws. The Burlington defendants (except for one individual) have moved under Rule 12(b) (1) and (6) to dismiss the first and fourth counts for lack of jurisdiction over the subject matter and failure to state claims upon which relief can be granted. Alternatively, under Rule 12(f), these defendants move to strike, in whole or part, sundry paragraphs of the first and fourth counts as well as one paragraph (59) of the third count.[2]

I.

The first count, involving Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2), Section 2(a), (d), (e), and (f) of the Clayton Act, as amended by the Robinson-Patman Act (15 U.S.C. § 13(a), (d), (e), and (f)), and Sections 4, 12, and 15 of the Clayton Act (15 U.S.C. §§ 15, 22, and 26), after identifying the parties, alleges the following facts to be taken as true for purposes of the motion: Plaintiffs, variously styling their stores as "Albert's," "Albert's Hosiery," or "Albert's Hosiery Stores," purchase substantial quantities of the hosiery they sell from one Albert Hayes, who distributes in interstate commerce to plaintiffs and other retailers throughout the United States. The stores plaintiffs operate, along with those of defendant Parklane and other competitors selling women's hosiery exclusively, "constitute a separate, substantial and distinct area of competition * * *."[3] Burlington and Parklane (in its role as distributor) compete with Albert Hayes.

Before 1954, the first count continues, Albert Hayes bought substantial quantities of hosiery from Burlington, but such purchases became only occasional thereafter. From 1953 to 1957 Albert Hayes sold to Parklane substantially all of the latter's hosiery requirements. In the years covered by the complaint, and until the present time, Burlington has attempted "to coerce and induce said Albert Hayes to purchase all or substantially all of his hosiery requirements from defendant Burlington." As part of this attempt, Burlington induced Parklane to cease buying from Albert Hayes and to buy from Burlington instead. At the same time the several defendants entered into a "combination, conspiracy, contract and plan" the purposes of which included, unless Albert Hayes agreed to purchase all his require-

---

1. It will be sufficient for most purposes to refer hereafter to Burlington and Parklane as the defendants.

2. Parklane and its president have made no formal motion, but have filed a brief memorandum offered "as evidencing their joinder" in the Burlington motion. Plaintiffs, pointing out that the motion papers are drafted with focused concern only for the Burlington movants, resist the proposed joinder. Since the motion is being denied. it is not vital to decide how many of the defendants may claim a share in the result.

3. The complaint (par. 17) adds alleged factual detail to support the quoted conclusion. We accept this conclusion, like others, for now. Cf. United States v. DuPont & Co., 351 U.S. 377, 395 & n. 22, 76 S.Ct. 994, 100 L.Ed. 1264 (1956).

ments from Burlington, action "to injure or to destroy the businesses of plaintiffs and other customers of said Albert Hayes so as to coerce and induce them to cease doing business with him and instead to do business with defendant Burlington, * * * [and] to injure and prevent competition in the sale of women's hosiery at retail between customers * * * of said Albert Hayes, including, among others, the * * * plaintiffs herein, * * * and the stores owned, controlled by or affiliated with defendant Parklane * * *." In further implementation of the conspiracy, Burlington agreed to and did extend credit to Parklane on terms more favorable than those given to other Burlington customers, financed the opening of new Parklane stores, gave discriminatorily favorable prices to Parklane, and extended other benefits and assistance to Parklane "which were not available, or not available on proportionately equal terms, to all of defendant Burlington's other hosiery customers."[4] Also in pursuance of the conspiracy, paragraph 31 of the complaint alleges, Parklane agreed to and did open retail stores close to plaintiffs' "for the purpose of injuring them and coercing and inducing them to cease dealing with * * * Albert Hayes and to deal instead with defendant Burlington." Since the opening of these Parklane stores (in 1960), defendants Burlington and Parklane have pressured plaintiffs either to sell their stores to defendants "or to agree to buy * * * all or substantially all of the hosiery requirements for said stores from the defendants Parklane and Burlington." Parklane has, as part of this effort, interfered with plaintiffs' leasing agreements and "engaged in other unfair

methods of competition." Moreover, the pattern of tactics described in paragraph 31 is said (par. 32) to have been duplicated by defendants in other cities around the country. Other acts of unfair competition—threats, misrepresentations, interference with employees and customers—all in furtherance of the conspiracy, are also alleged.

The first count ends with allegations of damage to plaintiffs, injuries to purchasers of women's hosiery, and public injury in the form of obstructions and restraints in interstate commerce.

The fourth count, also attacked by defendants' motion, incorporates the first, and adds the second (breach of covenants) and third (inducement of the breach) as being additional "acts * * * in furtherance of the aforesaid conspiracy."

## II.

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This general principle applies with at least its customary force in suits under the antitrust laws. E. g., United States v. Employing Plasterers Ass'n., 347 U.S. 186, 74 S.Ct. 452, 456, 98 L.Ed. 618 (1954); cf. Nagler v. Admiral Corporation, 248 F.2d 319, 322–334 (2d Cir. 1957); Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

---

4. Four paragraphs of the first count, detailing discriminatory pricing and other practices by Burlington in favor of Parklane, rest explicitly on the Robinson-Patman Act. The first of these (par. 38) refers to discriminations by Burlington "between plaintiffs, on the one hand, and defendant Parklane and others * * *." Defendants say in their Memorandum that that reference to "plaintiffs" must be an

inadvertence because (1) it is the only place in the long complaint where plaintiffs are suggested to be Burlington customers and (2) the paragraph is copied from the complaint in another pending action (S.D.N.Y., 63 Civ. 2043) brought by Albert Hayes and others against the defendants herein. Defendants' observation is highly plausible; it is not mentioned in the thorough memoranda for plaintiffs.

Its application requires denial of defendants' motion.[5]

■ 1. Defendants argue that plaintiffs are really complaining about alleged injuries to Albert Hayes and fail to "allege some direct injury to themselves caused by defendants' violation of the antitrust laws." It is not necessary in disposing of this contention to conjure with the legal subtleties generated by rules couched in terms of "direct" versus "indirect" consequences. Nor is it necessary to consider whether this notion of "direct" injury has any place at all in this context when "allegations adequate to show a violation and, in a private treble damage action, that plaintiff was damaged thereby are all the law requires." Radiant Burners v. Peoples Gas Co., 364 U.S. 656, 660, 81 S.Ct. 365, 367, 5 L.Ed.2d 358 (1961); and see Note, 64 Colum.L.Rev. 570, 581–88 (1964). For the cases, whatever their factual and verbal diversities, make clear at a minimum that one qualifies as a private antitrust plaintiff when "the violation is directly aimed" at him or he has been "directly harmed" by it. Productive Inventions v. Trico Products Corp., 224 F.2d 678, 679 (2d Cir. 1955), cert. denied, 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956); see also Steiner v. 20th Century-Fox Film Corporation, 232 F.2d 190, 193 (9th Cir. 1956); cf. South Carolina Council of Milk Producers v. Newton, 360 F.2d 414 (4th Cir. 1966).[6] Plaintiffs allege enough to meet even this debatably stringent test.

■■ The complaint charges a conspiracy expressly and purposefully aimed at coercing and injuring the plaintiffs as identified targets. It does not matter that defendants, under the allegations, may be conspiring to produce the restraints hurting plaintiffs only as part of an overall scheme to reach still bigger game. A conspiracy, in antitrust law as elsewhere, may have a variety of objects and victims. Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 698–699, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). The complaint alleges injury direct and specific enough when it charges that defendants conspired by a course of predatory tactics to put plaintiffs out of business and thereby destroy the interstate trade between plaintiffs and Albert Hayes.

2. Defendants argue that plaintiffs lack standing to complain of the alleged Robinson-Patman violations because they are neither competitors nor customers of Burlington. In considering this point, we assume with defendants that paragraph 38 states an inadvertent falsehood when it describes plaintiffs as purchasers from Burlington (see note 4, *supra*), although it may be doubted, strictly speaking, whether such an assumption is permitted on a motion to dismiss. We assume further—as plaintiffs also do, at least *arguendo*—that plaintiffs have no right of action for Robinson-Patman violations in the form of discriminations among Burlington customers if they neither buy from nor compete with Burlington. See Klein v. Lionel Corporation, 237 F.2d 13, 14–15 (3d Cir. 1956); Bolick-Gillman Company v. Continental Baking Company, 206 F.Supp. 151 (D. Nev.1961). These premises do not lead to the dismissal defendants seek.

5. The movants assert lack of jurisdiction over the subject matter as well as failure to state claims in counts I and IV. They make no separate points under this branch of the motion, seemingly implying that, since federal jurisdiction is claimed only under the Clayton Act, failure of the claim on the merits inevitably entails failure of jurisdiction. While this assumed premise is dubious, Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, 13 A.L.R.2d 383 (1946), it makes no difference. The conclusion that the motion must be denied on the merits is dispositive in any event.

6. In the last-cited case, the Fourth Circuit said that some of the case law unduly "straitens the intent of the Clayton Act" in requiring "directness of injury" as a condition for suing. See 360 F.2d at 417. The Court formulated the test as one of "proximate cause," leaving for judicial determination in each case whether particular plaintiffs should be barred as being "only distantly or tenuously hurt." Id. at 419, 420.

■ Unlawful conspiracies commonly consist in part of conduct entirely lawful in itself. Thus, there is no actionable wrong in the mere fact that a competitor (here, Parklane) sets up shop in close proximity to an existing enterprise. The same may be said for present purposes of the alleged special benefits and advantages extended by Burlington to Parklane to make the latter a more effective competitor. But these steps may serve as "part of the sum of the acts which are relied upon to effectuate the conspiracy * * *." American Tobacco Co. v. United States, 328 U.S. 781, 809, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946).

■ The gist of the case is the alleged agreement or combination to monopolize and restrain trade. If the otherwise lawful actions the complaint describes have been taken under an agreement to injure or destroy plaintiffs' business, and in this way to restrain competition in, and monopolize, the "distinct area of competition" alleged in the complaint, then plaintiffs have a Sherman Act claim. Schine Chain Theatres v. United States, 334 U.S. 110, 119, 68 S.Ct. 947, 92 L.Ed. 1245 (1948); Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). Because they are sufficient in this respect, the counts in question cannot be dismissed if they fail to allege in addition claims warranting independent relief under Robinson-Patman.

■ 3. Defendants are also wrong in their contention that the two antitrust counts must fall because plaintiffs "have totally failed to show any impact on or relationship with interstate commerce * * *." The complaint amply alleges that the commerce affected is the interstate sales and shipments from Albert Hayes to plaintiffs. The fact that plaintiffs' business is retail selling within Chicago does not diminish the sufficiency of the alleged impact upon their purchases in commerce. "That wholly local business restraints can pro-

duce the effects condemned by the Sherman Act is no longer open to question." United States v. Employing Plasterers Ass'n, 347 U.S. 186, 189, 74 S.Ct. 452, 454, 98 L.Ed. 618 (1954). See also Klor's v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); United States v. Women's Sportswear Ass'n, 336 U.S. 460, 464, 69 S.Ct. 714, 93 L.Ed. 805 (1949). This principle applies even without reference to the clearly interstate aspects of *defendant's* business and the allegations that this business and its revenues are being employed to effect the wrongs plaintiffs charge. Cf. Moore v. Mead's Fine Bread Co., 348 U.S. 115, 119–120, 75 S.Ct. 148, 99 L.Ed. 145 (1954).

■ 4. Finally, we reject the alternative prayer that numerous allegations of the complaint be stricken at this stage. One category against which this attack is leveled consists of allegations relating to defendants' war on Albert Hayes and their attempts generally to destroy his custom. It cannot be said with assurance that these averments are wholly immaterial in describing and defining the conspiracy plaintiffs charge. See Atlantic City Electric Co. v. General Electric Co., 207 F.Supp. 620, 629–630 (S.D.N.Y.1962). Similarly, the Robinson-Patman allegations, already discussed, have at least some "possible bearing on the issues of the trial * * *." Fleischer v. A.A.P., Inc., 180 F.Supp. 717, 721 (S.D.N.Y.1959). The claim of prejudice because plaintiffs have adopted allegations from the pending complaint of Albert Hayes against these same defendants is not impressive. If the allegations fit, as they seemingly do, they may serve in more than one lawsuit. The task of answering them, already accomplished, is not oppressive. This is, in short, not one of the rare cases in which the early surgery allowed by Rule 12(f) seems helpful. See 2 Moore, Federal Practice 2317–2319 (2d ed. 1965).

The motion is denied.

It is so ordered.