SCM CORPORATION, a New York
corporation, Plaintiff,

v.

RADIO CORPORATION OF AMERICA,
a Delaware corporation, Defendant.

65 Civ. 686.

United States District Court
S. D. New York.

Oct. 3, 1967.

Pennie, Edmonds, Morton, Taylor & Adams, New York City, for plaintiff. Frank F. Scheck, New York City, of counsel.

William K. Kerr, New York City, for defendant. Lawrence J. McKay, New York City, of counsel.

## OPINION

McLEAN, District Judge.

The second amended complaint in this action contains three counts. The first seeks a declaratory judgment that patents No. 2,922,883, 3,052,539 and 3,052,-540, owned by defendant, relating to electrostatic photocopy machines and coated copy paper used therewith, are invalid and not infringed by plaintiff. In addition to allegations of invalidity which are common to all three patents, i. e., lack of invention, obviousness, lack of definiteness, and misuse by defendant, the complaint alleges with respect to patent No. 3,052,539 that it was procured by defendant by willful fraud upon the Patent Office. Defendant's answer alleges a first counterclaim seeking a determination that all three patents are valid and that plaintiff has infringed them. Plaintiff's first count and defendant's first counterclaim are not involved on these motions.

Plaintiff's second and third counts relate only to patent No. 3,052,539. The second count alleges in substance that defendant induced plaintiff to accept a license under this patent, a license which plaintiff later terminated, by threatening to sue plaintiff for infringement and by fraudulently "concealing from plaintiff material facts" and "making material misrepresentations of fact." The complaint does not state what the material facts were that defendant allegedly concealed and misrepresented. On the strength of these allegations, plaintiff seeks restitution of the royalties, amounting to something in excess of $465,000, which it paid to defendant under the license prior to its termination.

Jurisdiction of this court over this count is alleged to rest on 28 U.S.C. § 1332, the diversity of citizenship section. In its answer defendant denies jurisdiction. Since the complaint appears to allege that both plaintiff and defendant are New York citizens, the court is perplexed as to what plaintiff's theory of jurisdiction may be. Although the point has not been raised on this motion, the court requests further information on it from plaintiff, for if in fact the court does not have jurisdiction of this count, the court is duty bound to dismiss it.

The third count is an antitrust claim of the type inspired by Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). The complaint charges that defendant has "monopolized interstate commerce in the electrostatic photocopy field" by asserting its patent No. 3,052,539 in a licensing program, despite the fact that defendant procured the patent by means of willful fraud upon the Patent Office. It charges that in its licensing program defendant has fraudulently concealed and fraudulently misrepresented "the same or similar" facts which defendant concealed from and misrepresented to the Patent Office. It alleges that plaintiff has been damaged by this monopoly in that plaintiff paid royalties to defendant prior to plaintiff's termination of the license, and in that plaintiff has incurred expense in maintaining this action. The complaint seeks recovery of "treble damages" by which plaintiff apparently means three times the royalties paid and literally, although perhaps this was not intended, three times its attorneys' fees.

Defendant has pleaded as an affirmative defense to the second and third count (not to the first) of the complaint that "plaintiff is guilty of unclean hands for the reasons set forth hereinafter in RCA's Second Counterclaim." Defendant's second counterclaim is an action brought under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26). It charges that plaintiff has violated Section 2 of the Sherman Act and Section 3 of the Clayton Act.

Plaintiff has moved to strike the affirmative defense and to dismiss the second counterclaim on the ground that each is insufficient in law. In the alternative, plaintiff has moved under Rule 42(b) for a separate trial of certain of the issues in this complex litigation.

Since defendant's affirmative defense of "unclean hands" merely incorporates by reference the allegations of the second counterclaim, it is necessary, in determining the sufficiency of the defense as well as of the counterclaim, to examine these allegations with care. They cover sixteen pages. They are ingenious as well as lengthy. Of course, on this motion these allegations, in so far as they purport to allege facts, must be assumed to be true. They may be briefly summarized as follows:

RCA is the originator of the Electrofax process, is the owner of the three patents above mentioned relating to the process and to the machines and coated papers which carry it out, and by reason of that ownership, is "the sole lawful monopolist" of that process. RCA does not manufacture either the machines or the paper. It has offered non-exclusive licenses under its patents to anyone, whether machine manufacturer or paper manufacturer, who wants one. It now has some 63 licenses outstanding under which it receives royalties, based upon a percentage of each licensee's selling price of the machines or paper.

The sale and leasing of machines and the sale of paper constitute a substantial part of interstate and foreign commerce. Beginning in 1959 and continuing to the present, plaintiff has monopolized a substantial part of this commerce, in violation of Section 2 of the Sherman Act. It has also leased and sold Electrofax machines on condition that the purchaser shall not buy or use goods of plaintiff's competitors, in violation of Section 3 of the Clayton Act. The monopoly has manifested itself in a variety of unlawful acts engaged in by plaintiff, including, among others, hiring away competitors' employees, some of whom were familiar with defendant's process, acquiring the assets of one of defendant's former licensees, requiring licensees of plaintiff's machines to obtain their requirements of paper from plaintiff, refusing to sell plaintiff's newest model of machine and requiring customers to lease it, offering service contracts containing illegal "tie-in" clauses, and refusing to sell replacement parts for its machines to its competitors.

Plaintiff has thereby acquired a "dominant position" in the market. In so doing, it has made use of defendant's research and development. Plaintiff has "willfully abused" that dominant position to eliminate defendant's position as "the only lawful monopolist in the Electrofax field." It has used its dominant position "to confront RCA with a market dominated by only one possible licensee of its patents." Plaintiff has done this in the following manner:

While plaintiff was a licensee under certain claims of defendant's patent No. 3,052,539, plaintiff demanded that defendant grant it a "discriminatory" reduction in royalty rates. It also demanded, with respect to Electrofax paper, that defendant license its patents only to paper manufacturers, not to machine manufacturers such as plaintiff, and that defendant require the paper manufacturers to execute a "compulsory package license." Defendant refused to accede to these demands, whereupon plaintiff terminated its license agreement with defendant and began this action, "thereby attempting to evoke and obtain the aid of this court to implement and assist it in the furtherance of the unlawful offenses" previously alleged.

The result of all this has been that competition in the sale and leasing of machines and in the sale of paper has been restrained, and defendant has been injured in that it has been deprived of royalties "lawfully due and owing from plaintiff" and has been put to the expense of defending this action. Moreover, defendant has been "threatened with loss" in that it has been prevented from making license agreements with persons who, but for plaintiff's behavior, would have gone into the Electrofax business and would have taken licenses from defendant, and defendant has been prevented from enjoying the full benefit of its patents in that, because of plaintiff's behavior, defendant's licensees have been deterred from promoting defendant's invention as they otherwise would have.

The relief asked is an injunction and damages "in excess of $1,000,000" and that these damages be trebled. Here again, as in the case of plaintiff's complaint, defendant appears to be seeking recovery of three times its attorneys' fees.

In determining the sufficiency of defendant's affirmative defense and counterclaim, it will be helpful to consider the counterclaim first. Of course, the fact that defendant has asserted its antitrust charges in a counterclaim rather than in an independent action is immaterial, as far as the legal sufficiency of those charges is concerned.

Section 4 of the Clayton Act (15 U.S.C. § 15) provides that a treble damage action may be maintained by "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." Section 16 of the Clayton Act (15 U.S.C. § 26) provides that any person may sue for injunctive relief "against threatened loss or damage by a violation of the antitrust laws." Neither party claims that the test of standing to sue for injunctive relief differs from the test of standing to sue for treble damages. I shall assume that the question is the same, regardless of the type of relief requested, and that the

inclusion of a prayer for injunctive relief in the present pleading does not differentiate this case from those decided cases which are concerned primarily with treble damage actions.

The question is whether defendant, on the allegations of its counterclaim, has been "injured in" its "business or property by reason of" plaintiff's violation of the antitrust laws, within the meaning of Section 4 of the Act. It is at once apparent that the injuries which plaintiff has allegedly inflicted upon machine and paper manufacturers do not directly affect defendant, for defendant manufactures neither machines nor paper. And in so far as defendant has thereby been deprived of royalties which it might otherwise have received from those machine or paper manufacturers whom it has licensed under its patents, or whom it might otherwise have licensed, this injury, although perhaps very real, has been held to be too indirect to afford a patentee standing to sue for treble damages. Productive Inventions, Inc. v. Trico Products Corp., 224 F.2d 678 (2d Cir. 1955; cf. Nationwide Auto Appraiser Service, Inc. v. Association of Casualty and Surety Companies, Trade Reg.Rep. (1967 Trade Cas.) ¶ 72200 (10th Cir. Sept. 1, 1967).

Under this doctrine, the "threatened" loss alleged in the counterclaim is not enough to afford defendant the necessary standing.

To have standing, the injury must be "direct," not "incidental." The wrongful acts which constitute antitrust violations must be "aimed" at the complaining party. He must be within their "target area." Schwartz v. Broadcast Music Inc., 180 F.Supp. 322 (S.D.N.Y.1959); Schulman v. Burlington Industries, Inc., 255 F.Supp. 847 (S.D.N.Y.1966).

Here defendant's actual injury, as distinct from its "threatened loss," is said to be (apart from the expenses of this litigation) the loss of royalties which defendant would have received from plaintiff but for plaintiff's termination of the license. Defendant claims that

this is a direct injury. But calling it direct does not make it direct. Can it fairly be said, taking defendant's allegations at their face value, that this injury occurred "by reason of" the violations of the Sherman Act and of the Clayton Act? Is there a causal connection between plaintiff's violations and defendant's damage?

The immediate cause of defendant's injury, i. e., the reason why it is no longer receiving royalties, is the fact that plaintiff terminated the license. Were plaintiff's antitrust violations a proximate cause of that termination, and hence a proximate cause of defendant's loss?

Clearly the specific illegal practices allegedly engaged in by plaintiff, the hiring away of employees, the tie-in sales, and the like, did not cause it. On the contrary, while these practices were going on, the license was still in effect and defendant was still receiving royalties thereunder.

But it is alleged that these illegal practices enabled plaintiff to dominate the market. Was this dominance a proximate cause of the termination and of the loss of royalties? It is hard to see how it could have been. If defendant had yielded to plaintiff's demands and had granted plaintiff a discriminatory low royalty, perhaps it could be said that in some way, by means of its dominance, plaintiff had forced defendant to accept this loss of revenue. But defendant did not yield. Defendant was not influenced by plaintiff's market dominance. Plaintiff thereupon unilaterally terminated the license, thereby laying itself open to a suit for infringement. Plaintiff was not able to compel defendant to agree to the termination or to waive its right to sue for infringement.

Whether or not the termination was a breach of contract is immaterial for present purposes. The point is that there seems to be no real causal connection between plaintiff's alleged monopoly and the loss of royalties which defendant has sustained.

Moreover, the termination of the license under these circumstances did not affect competition in the Electrofax industry, or enhance plaintiff's monopolistic position therein. If plaintiff had succeeded in forcing defendant to agree not to sue for infringement once the license ended, plaintiff would thereby have derived a competitive advantage over the other machine manufacturers who are licensees. But that is not what occurred.

The counterclaim, it is true, alleges in so many words that plaintiff abused its dominant position to eliminate defendant. But these words are pure conclusions. It is apparent from the pleading that defendant has not been eliminated. Whether or not plaintiff can manufacture these machines with impunity, without a license from defendant, depends upon the ultimate outcome of this patent litigation.

The only other actual injury which defendant alleges is the expense of defending this action. The action is alleged to have been begun by plaintiff in furtherance of its unlawful offenses. This again is conclusory language which will not stand up under examination. This action will not further plaintiff's unlawful offenses. It will not affect competition or enhance plaintiff's monopoly position, whatever the outcome. If defendant's patents turn out to be valid, plaintiff, by losing the action, will be no better off. If, on the other hand, defendant's patents turn out to be invalid, plaintiff will be relieved of royalties, it is true, but so will all of defendant's other licensees.

Whether monopolist or not, plaintiff has a right to test out the validity of defendant's patents. Every litigation inevitably causes expense to those concerned. But defendant's expense in this one is not incurred by reason of plaintiff's monopoly, it is incurred by reason of the fact that both parties are litigating the validity of defendant's patents.

The court has carefully considered the cases relied upon by defendant, of which,

in addition to those previously cited, La Chapelle v. United Shoe Machinery Corp., 90 F.Supp. 721 (D.Mass.1950); Hoopes v. Union Oil Co., 374 F.2d 480 (9th Cir. 1967); and Kobe Inc. v. Dempsey Pump Co., 198 F.2d 416 (10th Cir. 1952), cert. denied, 344 U.S. 837, 73 S.Ct. 46, 97 L.Ed. 651 (1952), are the most important. Without expanding this opinion by discussing them in detail, the court believes that none of them so closely resembles the allegations of this counterclaim as to be determinative.* The principle is clear. The difficulty, as usual, is in the application of the principle. The court cannot escape the conclusion that this counterclaim is a skillful attempt to turn a patent suit into an antitrust action, an attempt which does not come off.

Assuming the factual allegations of the counterclaim to be true, the victims of plaintiff's antitrust violations, the people in the "target area," are plaintiff's competitors, the manufacturers of Electrofax machines and paper. Defendant, as a patent owner, no matter how important its patents may be, is only incidentally affected. The injury which it has suffered because its 63 licensees have suffered is not, under the authorities, an injury which gives it standing to sue. The other injury which it has sustained, its loss of royalties and its litigation expense, is not an injury which it has sustained by reason of plaintiff's antitrust violations. This is an injury which defendant has suffered because plaintiff challenged its patents, whether justifiably or not remains to be seen. As to that injury, plaintiff's violations and its alleged monopolistic position are irrelevant.

It follows that the second counterclaim does not allege facts which confer upon defendant standing to sue for plaintiff's alleged violations of the Sherman Act and the Clayton Act, either for treble damages or for injunctive relief. The counterclaim thus fails to state a claim for relief.

We come now to defendant's second affirmative defense of unclean hands, which incorporates the allegations of its second counterclaim. We are not concerned here with defendant's standing to sue for plaintiff's alleged antitrust violations, but rather with whether those violations constitute a defense to the second and third count of plaintiff's complaint. The ultimate question, however, is substantially the same. Plaintiff's conduct is not a defense unless there is a direct relationship between plaintiff's alleged misdeeds and defendant's. Did plaintiff's violations of the antitrust laws so infect plaintiff's second and third counts as to make it inequitable to grant plaintiff relief thereon? Is plaintiff attempting to charge defendant with liability for some act in which plaintiff itself participated or because of which plaintiff is at fault as well as defendant? If not, if plaintiff's offenses are merely collateral, plaintiff may still recover for defendant's wrongs, for the fact that plaintiff himself may have sinned in some other connection does not make it an outlaw, deprived of all legal rights. Loughran v. Loughran, 292 U.S. 216, 54 S.Ct. 684, 78 L.Ed. 1219 (1934); Kiefer-Stewart Co. v. Joseph E. Seagram &

---

* The closest case is La Chapelle v. United Shoe Machinery Corp., supra, upon which this counterclaim appears to have been patterned in some respects. The defendant there, by virtue of its monopolistic practices, so controlled the shoe machinery industry that it was virtually the only customer for plaintiff's patents and was thereby able to compel plaintiff to sell his patents to defendant at prices below their true value. The court held that such allegations gave plaintiff standing to sue. In the present case, however, plaintiff is not the sole customer for defendant's patents, for despite the fact that the counterclaim alleges that defendant is "confronted" with a market dominated by only one possible licensee, it also alleges that defendant still has 63 other licenses. Moreover, defendant here has not been forced to do anything. It still has its right to sue for infringement, a right which it is now seeking to enforce in this action.

Sons, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951); Moore v. Mead Service Co., 190 F.2d 540 (10th Cir. 1951), cert. denied, 342 U.S. 902, 72 S.Ct. 290, 96 L.Ed. 675 (1952); Trebuhs Realty Co. v. News Syndicate Co., 107 F.Supp. 595 (S.D.N.Y. 1952).

 Judged by this test, the defense of unclean hands is not valid, either as to plaintiff's second or its third count. In the second count, plaintiff alleges that defendant induced plaintiff to enter into a contract with defendant, i. e., a license agreement, by fraudulent representations and concealment. Obviously plaintiff did not participate in defrauding itself. There is no claim that the license agreement was illegal or that plaintiff acted improperly in accepting a license. If defendant in fact induced plaintiff to accept this license by fraud, the fact that plaintiff may have violated the antitrust laws cannot justify defendant's fraud nor can it bar plaintiff's recovery for that fraud. Plaintiff's transgressions are purely collateral.

The same is true of plaintiff's third count in which it charges that defendant is not entitled to the benefit of its patent monopoly because it has defrauded others as well as plaintiff. If defendant has in fact misrepresented and concealed facts in promoting its licensing program, it is no excuse for it to say that plaintiff has contravened the Sherman or Clayton Acts.

In the court's opinion there is not a direct enough relationship between plaintiff's charges and defendant's counter-charges to make the latter a defense to the former. Defendant's second affirmative defense is therefore insufficient in law.

In view of these conclusions, no severance of the issues is necessary. It will not unduly complicate the trial of the patent case to try at the same time the issues raised by plaintiff's second and third counts. Matters of order of proof can be considered at a pre-trial conference and set forth in a pre-trial order.

The trial will proceed, as scheduled, on March 4, 1968. A pre-trial conference will be held beginning on February 19, 1968, and continuing thereafter until completed. Plaintiff is requested to furnish the court well in advance of the pre-trial conference with a memorandum explaining plaintiff's theory of jurisdiction over the second count.

Plaintiff's *motion to dismiss* defendant's second counterclaim and to strike defendant's second affirmative defense is granted.

So ordered.